# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WILMINGTON DIVISION

IN RE:

    **Charles and Marilyn Collier,**

        **Debtors.**                                                          **Case No. 04-08608-8-JRL**

## ORDER

      This matter comes before the court on the debtors' motions for sanctions against John Bullock, Ned Reynolds, Robert Carter, and Pierce & Company (respondents) for violating the provisions of the automatic stay. A hearing was held in Wilmington, North Carolina on August 17, 2005.

      The debtors, Charles and Marilyn Collier, filed their Chapter 13 petition on November 5, 2004. The respondents are all scheduled creditors in the debtors' petition. Beginning in April 2004, Ned Reynolds and the debtors were involved in a construction project pursuant to which the debtors were to complete certain construction work on Reynolds' home. Reynolds asserts that the debtors took his money, failed to complete the project, and engaged in conduct that led him to believe that he had been defrauded. On August 16, 2004, Reynolds filed a report with the Columbus County Sheriff's Department concerning the transactions between himself and the debtors. The report was filed nearly three months prior to the debtors' bankruptcy, and Reynolds took no further action in this matter after being informed that the dispute was civil in nature.

      The debtors were involved in a construction project in September and October of 2004 with John Bullock and in July of 2004 with Robert Carter, pursuant to which the debtors were to complete certain construction work on Bullock and Carter's homes. Bullock and Carter assert that the debtors took their money, failed to complete the projects, and engaged in conduct that led them to believe that

they had been defrauded. On Monday, November 8, Bullock and Carter went to the Columbus County magistrate to explain the situation. The magistrate issued warrants against the debtors for misdemeanor criminal violations relating to the transactions between the debtors and Bullock and Carter. Bullock and Carter assert that they went to the magistrate on Monday, November 8 without knowledge that the debtors had filed bankruptcy the previous Friday. Bullock and Carter further assert that they did not learn of the debtor's bankruptcy until sometime between November 11 and November 14, 2004.[1]

The debtors purchased materials and supplies from Pierce & Company on an open account at various times prior to December 31, 2003. At that time, the account had been delinquent for a substantial time and Pierce & Company wrote off the account as a bad debt. Pierce & Company asserts that it never initiated contact with the Columbus County Sheriff's Department or District Attorney's office regarding its dealings with the debtors.

In early December 2004, detective Michael Glenn, a deputy sheriff with the Columbus County Sheriff's Department, contacted all of the respondents and asked for information in connection with the matters between themselves and the debtors. It is the respondents' position that the Columbus County District Attorney and the Columbus County Sheriff's Department pursued the investigation on their own and took the matter to the Columbus County Grand Jury on their own initiative, resulting in the felony indictments issued against the debtors. The respondents contend that they had no involvement with the decision of the district attorney's office to dismiss the misdemeanor charges and go to the grand jury, did not participate in the grand jury proceedings, and have not taken any action against the debtors in the criminal proceedings after learning of the bankruptcy. At the hearing, the court heard testimony to

---

[1] The notice from the court was dated November 10, 2004, and debtors concede they made no earlier attempts to inform respondents of their filing.

this effect from each of the respondents, and testimony from Columbus County Assistant District Attorney Sara Garner that the District Attorney's office was pursuing criminal actions against the debtors on its own accord.

The debtors assert that subsequent to the bankruptcy filing and imposition of the automatic stay, the respondents took steps to attempt to collect debts properly listed in the debtors' petition by seeking criminal actions against the debtors on the grounds that they obtained property by false pretenses, and that they pressured officials to institute the current felony charges. The debtors contend that by seeking criminal actions against them for the purpose of collecting a debt, the respondents have willfully violated the provisions of the automatic stay. The debtors have employed an attorney to represent them in the criminal action, and seek out of pocket expenses, attorney fees, and sanctions against the respondents.

11 U.S.C. § 362(b)(1) provides that "the filing of a petition...does not operate as a stay- under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor." In Simonini v. Bell (In re Simonini), 69 Fed. Appx. 169, 2003 WL 21500197 (4th Cir. 2003), the Fourth Circuit held that "giving the words of the statute their plain meaning, § 362(b) applies to all criminal actions, regardless of the underlying aim of the prosecution." Id. at 170. In that case, the district court held that it had the power to enjoin the Nevada prosecution under 11 U.S.C. § 105(a) because that section grants courts the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." Id. The Fourth Circuit disagreed and vacated the injunction of the Nevada criminal proceeding, stating that although § 105(a) grants the court broad power, it is not unlimited, and "cannot be invoked, for example, to achieve ends contrary to other specific Code provisions." Id. at 170, 171 (quoting Kestell v. Kestell (In re Kestell), 99 F.3d 146, 148 (4th Cir. 1996)).

11 U.S.C. § 362(b) does not stop the commencement or continuation of a criminal proceeding,

and under Simonini there is no exception for bad prosecutorial purpose or bad faith. 11 U.S.C. §105 cannot be used to enjoin the criminal prosecution. On the other hand, a creditor who after the bankruptcy with knowledge of the bankruptcy seeks to initiate that criminal process to collect a debt may have engaged in sanctionable conduct. In re Byrd, 256 B.R. 246, 251 (Bankr. E.D.N.C. 2000). The appearance before the magistrate and the swearing out of warrants on November 8 may technically have violated the automatic stay that came into place the previous Friday. However, all of the testimony establishes that it was done without any knowledge of the bankruptcy filing, and under § 362(h), sanctionable conduct must be willful. In order for conduct to be willful, it has to be done intentionally and with knowledge of the bankruptcy case. Thus, there is no basis for sanctions there. After November 8, the question becomes factually whether these respondents had some hand in affirmatively initiating felony prosecutions that would not have taken place otherwise, or whether they were responding to a legitimate criminal investigation which any citizen, including a creditor, has a right to do. The court concludes by the weight of the evidence that they were in fact responding to the legitimate investigatory efforts of detective Glenn in acquiring information necessary to the ongoing prosecution, and as such, they engaged in no sanctionable conduct. The motion for sanctions is denied.

**So Ordered.**

**Dated: August 30, 2005**

J. Rich Leonard
United States Bankruptcy Judge